Alfonso J. CERVANTES, Plaintiff,

v.

TIME, INC., and Denny Walsh,
Defendants.

No. 70 C 259(1).

United States District Court,
E. D. Missouri, E. D.

Aug. 25, 1971.

Mortimer A. Rosecan, Rosecan & Popkin, St. Louis, Mo., for plaintiff.

Harold R. Medina, Jr., Cravath, Swaine & Moore, New York City, Hundley & Peloquin, Washington, D. C., and Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for defendant Time, Inc.

D. Jeff Lance, Cook, Murphy, Lance & Mayer, St. Louis, Mo., for defendant Denny Walsh.

## MEMORANDUM

MEREDITH, Chief Judge.

This action for libel arises out of an article published in Life Magazine which dealt with the appointment by plaintiff of attorney Morris Shenker as head of the Commission on Crime and Law Enforcement. Plaintiff is the Mayor of the City of St. Louis, Missouri. The case is before the Court on defendants' motion for summary judgment and plaintiff's motion to compel defendant Denny Walsh to testify and reveal the persons who are the sources of his information. Both motions have been briefed, orally argued, and submitted to the Court.

In support of their motion for summary judgment, defendants contend that the article is protected by the First Amendment and that under the doctrine of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny, recovery cannot be had unless plaintiff can show that the defendants published false and defamatory material with a malicious intent to injure plaintiff by its falsity. Defendants further contend that plaintiff cannot, as a matter of law, meet the burden placed upon him to prove actual malice; that, therefore, summary disposition should be granted to obviate the chilling effect on freedom of the press caused by suits such as this.

Plaintiff contends that the motion for summary judgment is not ripe for decision at this time, because there is an issue of fact as to the truth of specific paragraphs in the article. The plaintiff further contends that there is an issue of fact as to the good faith of author, Denny Walsh, in refusing to reveal his sources, which has a bearing on the malicious intent of defendants, and that, therefore, summary judgment cannot be granted.

Both parties agree that this case is governed by New York Times Co. v. Sullivan, supra. The controlling legal principal that has evolved from the New York Times Co. v. Sullivan case is that

where a publisher deals with matters of legitimate public concern, the First Amendment protects him from claims for libel, unless he not only publishes false material, but does so with "actual malice", that is, with knowledge of its falsity or with reckless disregard for its truth or falsity. Monitor Patriot Co. v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L. Ed.2d 35 (1971); Ocala Star-Banner Co. v. Damron, 401 U.S. 295, 91 S.Ct. 628, 28 L.Ed.2d 57 (1971); Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L. Ed.2d 45 (1971); St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L. Ed.2d 262 (1968); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (5th Cir. 1970); Rosenbloom v. Metromedia, Inc., 415 F.2d 892 (3rd Cir. 1969); United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc., 404 F.2d 706 (9th Cir. 1968); Cerrito v. Time, Inc., 302 F.Supp. 1071 (N.D.Cal.1969).

■■ In St. Amant v. Thompson, supra, the Court explained that in cases concerning publications dealing with public figures and matters of public interest, as well as public officials, the plaintiff has the burden of proving malice with convincing clarity, and went on to explain the "reckless disregard" aspect of the actual malice rule:

"These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."

■ The activities of organized crime are clearly matters of legitimate public concern and interest. The influence of organized crime and its activities are the subjects of vast expenditures of money and time by all branches of government, thus indicating the interest of the public, as well as the public's right to know and be informed of these activities. Plaintiff's activities in connection with organized crime, plus his being a public official, throw him into the public limelight. As a result, the mantle of constitutional protection covers the article upon which this suit is brought. Therefore, unless the plaintiff can show the requisite "actual malice", defendants are entitled to summary judgment.

The issue of Life Magazine for May 29, 1970, contained an eight-page article entitled "The Mayor, The Mob and The Lawyer". The article was written by Denny Walsh, an associate editor of Life Magazine and a winner of the Pulitzer Prize. The thrust of the article was that plaintiff, as Mayor of St. Louis, is conducting a "two faced" and "phony" fight on crime in the City of St. Louis by appointing attorney Morris Shenker as head of the Commission on Crime and Law Enforcement. The crux of the article is established by the following facts of which plaintiff does not complain or deny: (1) for over twenty years plaintiff and his campaign manager, Anthony Sansone, have been close personal friends; (2) Sansone is the son-in-law of St. Louis "gangster" James Anthony Michaels, Sr.; (3) Morris Shenker is the leading spokesman for organized crime in this country; (4) plaintiff appointed Shenker to head his Commission on Crime; (5) plaintiff, in describing the goals of the Commission on Crime, made no mention of organized crime existing in St. Louis; (6) plaintiff publicly denied the existence of organized crime in St. Louis; (7) the United States Government disclosed the existence of organized crime in St. Louis and sent a special task force to St. Louis for the purpose of dealing with organized crime.

The article then expands on this theme by pointing out plaintiff's personal and business ties with "mob figures in his city" through his relationship

with Sansone and Shenker. Sansone, son-in-law of gangster James Anthony Michaels, Sr., is shown to have certain personal and business ties with members of organized crime. Through Sansone, plaintiff is linked to the same gangsters, including Anthony Giardano, who has been described as a leader in organized crime. Specific instances are cited in the article in which plaintiff, together with Sansone, met with these same persons for business or social affairs.

The plaintiff's wealth and business holdings are also discussed in the article, specifically, that plaintiff announced his intention to avoid a conflict of interest by putting his private business interests in trust. The article points out that the transfer to the trust was illusory, because in many instances it appeared that plaintiff retained his interests in the business.

The last part of the article expands upon Morris Shenker's relations with the nation's top hoodlums and concludes that these relations "go far beyond mere legal representation". The purpose of this part of the article was to substantiate the allegation that the appointment of Shenker to head the Crime Commission made the plaintiff's fight on crime a façade so far as organized crime is concerned.

Plaintiff complains of only four of the eighty-seven paragraphs contained in the article. All other paragraphs in the article are either admitted or not denied by plaintiff for purposes of this motion. For convenience, the Court will hereafter refer to the paragraphs as they are numbered on a copy of the article that defendants have filed with the Court. The four paragraphs of which plaintiff complains are numbered 11, 12, 27, and 31.

Paragraph 11 stated that "[t]hrough Sansone, Cervantes has sought and received the counsel of this powerful gang leader [Michaels]. In December 1964, just two days after Cervantes declared his candidacy for mayor, he met with Sansone and Michaels to plan campaign strategy." Reports and exhibits filed by defendants reveal that the information presented in paragraph 11 is substantially contained in detailed F.B.I. reports obtained from the Department of Justice.

Paragraph 12 states that "[t]he following March, after Cervantes had won the primary, Sansone met again with Michaels at Rite Way to talk over Cervantes' prospects for the general election. This time Giardano, the Mafia boss, sat in too." Again, the matters contained in paragraph 12 are substantially the same as, and corroborated by, a signed, dated report of the Intelligence Unit of the St. Louis Police Department. Although the libelous character of paragraph 12 with regard to plaintiff is unclear, paragraph 12 is substantially corroborated by the police department report.

■ Paragraph 27 states that Michaels brokered insurance with the Cervantes agency. This statement is corroborated by two facts: (1) Michaels listed the Cervantes agency on his application for renewal of his broker's license, and (2) T. B. Stegman, head of the broker's section of the Division of Insurance, wrote a letter to George H. Heckman, president of Cervantes and Associates, Inc., in which he assumed that Michaels had brokered insurance through the Cervantes agency. The letter requested the agency to verify and furnish a transcript of this business to the Missouri Division of Insurance. The reply given by Heckman was that: "We have nothing for this man at present. Understand that he wants to broker business with us." From these documents and the reasonable inferences arising therefrom, the defendants could have reasonably concluded that Michaels brokered insurance with the Cervantes agency. Paragraph 27 does not constitute such an error of interpretation so as to rise to a level of reckless disregard of the truth. See Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971).

Paragraph 31 states that plaintiff acted as bartender to the royalty of organized crime by serving drinks at Sansone's home following the funeral of Mrs. James Michaels, Sr. This paragraph is substantiated by an official F.B.I. report obtained from the Department of Justice by defendant Walsh.

■ The Court finds that the corroboration of the paragraphs in dispute, coming from highly trustworthy reports and documents, based upon police or F.B.I. investigations, is sufficient to negate malice. Whether true or untrue, paragraphs 11, 12, 27, and 31 are based upon substantial and credible reports and information. The paragraphs are not, as plaintiff contends, fabrications of the defendants with no substantial corroboration. The conduct of the defendants in printing these paragraphs was not highly unreasonable and did not constitute an extreme departure from the standards of investigation and reporting ordinarily adhered to by a responsible publisher. Defendant Time, Inc., additionally checked and verified the reports in such a manner that it had every reason to believe the truth of the statements contained in the reports. Plaintiff has wholly failed to establish "actual malice" or reckless disregard for the truth on the part of the defendants.

A fair reading of the entire eighty-seven paragraph article convinces this Court that the four paragraphs complained of here have little or no impact on the total article. In context, the four paragraphs are a minute and relatively ineffective portion of the article as a whole. In any event, the Court finds that paragraphs 11, 12, 27, and 31 of the article were published without malice and with due regard for the truth.

■■ The depositions and biographical references file make it clear that defendants had no knowledge of falsity, no serious doubt concerning the truth of any statement in the article, and certainly no reckless disregard of whether or not statements in the article were false. Plaintiff has failed to produce or raise any issue as to actual malice on the part of the defendants. Furthermore, the issue of defendant Denny Walsh's good faith in not revealing his sources has no bearing on the malicious intent of the defendants under the facts of this case. Plaintiff has failed to present any evidence beyond his mere conclusionary affidavits, which would enable this Court to conclude that defendant Time's asserted failure in requiring Walsh to disclose the identity of his sources was motivated by malice or reckless disregard. It should be emphasized that plaintiff must have proof, not mere allegation or conjecture in a libel case. As stated in Hurley v. Northwest Publications, Inc., 273 F.Supp. 967 (D. Minn.1967), affirmed 398 F.2d 346 (8th Cir. 1968):

"A mere chance that somehow, somewhere, on cross examination or otherwise plaintiffs will uncover something which might add to their case but obviously of which now they have no knowledge, is mere speculation and conjecture and is not sufficient in view of the showing made here by the defendant." Id. at 974.

Accordingly, defendants' motion for summary judgment will be granted.

Plaintiff's motion to compel Walsh to reveal his sources will not be considered by the Court in view of the fact that the motion for summary judgment is being granted by the Court.