Richard J. RYDER, Appellant,

v.

TIME, INC., Appellee.

No. 75–1909.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1976.

Decided Oct. 6, 1976.

Albert C. Boehm, Arlington, Va., for appellant. Joseph H. Newlin, Arlington, Va., was on the brief for appellant.

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

John H. Pickering, Washington, D. C., with whom Michael L. Burack, Washington, D. C., was on the brief for appellee.

Before WRIGHT and ROBB, Circuit Judges, and STANLEY A. WEIGEL,* United States District Judge for the Northern District of California.

WEIGEL, District Judge:

This unusual libel case has arisen because two Virginia attorneys have the same first and last names.

Plaintiff Richard J. Ryder practices law in Annandale, Virginia, which is a suburb of Washington, D.C. He had been a member of the Virginia House of Delegates from January, 1970, to December, 1971, and an unsuccessful candidate for the Virginia State Senate in November, 1971. At the time he brought this suit in the court below against Time, Inc., publisher of *Time* magazine, he was politically active in his community, but not the holder of any public office.

Richard R. Ryder is also a Virginia attorney. However, he is located in Richmond, some 100 miles distant from Annandale. He is unrelated to and unconnected with plaintiff. In 1967, he (Richard R. Ryder) was suspended from practice for eighteen months because he had concealed stolen money and a sawed-off shotgun in his safe-deposit box. The money and weapon had been given to him by his client for safe-keeping.[1]

In July, 1973, *Time* magazine published a "Time Essay" lamenting the great number of attorneys who had abused their positions of public trust during the Watergate scandals. After observing that there are limits to the attorney-client privilege, the essay declared:

. . . In a 1967 Virginia case, Attorney Richard Ryder took stolen money and a sawed-off shotgun from his client and stored them in his own safe-deposit box.

1. *In re Ryder,* 263 F.Supp. 360 (E.D.Va.1967).

A U.S. district court, citing Benjamin Cardozo's observation that "the privilege takes flight when the relationship is abused," ruled that the special lawyer-client relationship could not be invoked in circumstances that so clearly involved obstruction of justice. Ryder was temporarily suspended from practice.

Plaintiff alleges that he has been damaged because omission of the middle initial has caused a number of people in his community to think that he is the Richard Ryder who was suspended from practice.[2] Defendant *Time* has not controverted the affidavits relied upon by plaintiff to establish that a damaging mistaken identification has occurred. Instead, it contends that plaintiff cannot recover unless he shows that the statements in the essay were published with "actual malice" as made requisite in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

The District Court found that the plaintiff was a "public figure" under the holding of *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), that the standard enunciated in *New York Times* applied and accordingly granted summary judgment in favor of defendant *Time.* Plaintiff appeals.

The question presented to us calls for a further delineation of the boundary between the doctrine of *New York Times* and that of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), in which the Supreme Court held that proof of actual malice was not required in libel suits brought by a private person, *i. e.,* one not a public figure.

Under the common law prior to *New York Times,* a defendant in a defamation suit arising out of a mistaken identification was strictly liable for any defamatory statement. Damages could often, under then applicable state law, be presumed from the mere fact of the defamation. *See* W. Prosser, *The Law of Torts,* 4th ed. § 113. One pre-*New York Times* case of mistaken iden-

tity, with facts strikingly similar to the case now before us, was decided in this jurisdiction. In *Washington Post Co. v. Kennedy,* 55 U.S.App.D.C. 162, 3 F.2d 207 (1925), a newspaper wrote a story about an accused forger "Harry Kennedy, an attorney, 40 years old" who was "brought back to Washington." The accused was Harry P. L. Kennedy. Plaintiff Harry F. Kennedy, a thirty-seven year old Washington attorney, recovered for libel without having to prove any negligence or ill-motive on the part of the newspaper. Since then, the law of defamation has undergone fundamental changes.

In *New York Times,* as noted above, the Supreme Court held that a public official could not recover in a libel suit unless he could show that the offending statement was made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 726. Three years later, an analogous rule was applied to public figures in *Curtis Publishing Co.* A like rule was applied to candidates for public office, as distinguished from holders of such offices, in *Ocala Star-Benner v. Damron,* 401 U.S. 295, 91 S.Ct. 628, 28 L.Ed.2d 57 (1971). That the *New York Times* doctrine was not to be applicable to all defamation actions was signaled in *Curtis Publishing Co.* There, the Court recognized that the rigorous standards of *New York Times* "are not the only appropriate accommodation of the conflicting interests at stake" in all defamation actions. In *Gertz,* the Court declared (418 U.S. at 347, 94 S.Ct. at 3010) that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Under *Gertz,* actual damages cannot be presumed; they must be proved.

The question before us is whether the "actual malice" standard of *New York*

---

**2.** It is also to be noted that the article did not identify that the Richard Ryder it mentioned practiced in Richmond, Virginia.

*Times* applies in this case. The court below held that it did because the plaintiff was a public figure. We cannot agree.

It is true that plaintiff had been a public official for a time and had been a candidate for public office. Yet these public activities had nothing to do with the reference to Richard Ryder in the essay and, in any case, those activities were no longer engaged in by plaintiff. It was Richard R. Ryder, not the plaintiff, who was the intended subject of that reference.

The distinction we make here between the public activities of an individual in one sphere, and his private status in another, was also delineated in *Gertz.* "It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." 418 U.S. at 352, 94 S.Ct. at 3013. So looking in this case, it is clear that plaintiff must be deemed a private individual.[3]

Here, a private person, through no fault of his own, has been exposed to serious damage to reputation by the failure of defendant sufficiently to identify the person defendant intended to reference. A modicum of care would have provided the correct identity. The 1967 case to which the Time Essay referred, *In re Ryder,* 263 F.Supp. 360 (E.D.Va.1967), showed, both by text and title, that the Ryder there involved was Richard R. Ryder. Moreover, the text of the case repeatedly made it clear that that Ryder was a lawyer from Richmond,

Virginia, and not from Annandale. For these reasons, we hold that plaintiff's rights in this case are governed by the doctrine enunciated in *Gertz* rather than that of *New York Times.*[4]

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

---

**3.** At one time, the subject matter of a discussion, rather than the public or private status of the individuals mentioned in that discussion, was the critical determination. *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) (plurality opinion). The plurality in *Rosenbloom* held that the *New York Times* "actual malice" standard applied whenever "the utterance involved concern[ed] an issue of public or general concern." At 44, 91 S.Ct. at 1820. The Supreme Court, however, repudiated this approach in *Gertz,* and proper focus of a court's attention is now the status of the individual mentioned in the utterance. *Time, Inc. v. Firestone,* 424 U.S. 448, 454, 96 S.Ct. 958, 965, 47 L.Ed.2d 154, 163 (1976). In this case before us, there was no

public debate as to any conduct of Richard J. Ryder nor was there any criticism of him as a public official or as a private citizen. To afford the full protection of the *New York Times* rule to the defendant's discussion of the public officials and lawyers involved in the Watergate scandals, it was not necessary to extend the same protection to defamatory statements about Richard J. Ryder. He had no connection with the scandals.

**4.** Determination of the status of Virginia law regarding libel of private persons and its application to the facts in this case must be made, at least initially, by the District Court in complying with our remand.