Jimmy **BRIGGS** and Jimmie Briggs, Appellants,

v.

**CHANNEL 4, KGBT; David Merrill, Individually and in his Capacity as News Manager of Channel 4; and David Marquis, Individually and in his Capacity as News Reporter for Channel 4, Appellees.**

No. 13–87–007–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 28, 1987.

Rehearing Denied Oct. 8, 1987.

William Kimball, Michael R. Ezell, Harlingen, for appellants.

Larry Watts, McAllen, Bonnie Ceroin, Houston, for appellees.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

OPINION

NYE, Chief Justice.

In this summary judgment case, we are presented with the issue of whether a genuine issue of material fact exists regarding appellant's libel cause of action. In seven points of error, appellant primarily raises issues regarding his status as a public figure under the standard of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d

789 (1974), and the existence of a fact issue on appellees' actual malice.

In reviewing a summary judgment, we follow the well-established rules set out in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Major Investments, Inc. v. De Castillo,* 673 S.W.2d 276, 279 (Tex.App.–Corpus Christi 1984, writ ref'd n.r.e.). The movant's burden is to show that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. The reviewing court, in determining whether a fact issue exists, must take all evidence favorable to the nonmovant as true. Every reasonable inference must be indulged, and every doubt resolved, in favor of the nonmovant. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Nixon,* 690 S.W.2d at 548–49.

By all appearances from the record before us, appellant Jimmy Briggs was a private individual until he became a candidate for the office of State Representative during the 1982 election year. Jimmy Briggs received approximately 6000 votes in losing the election on November 2, 1982. After the election, on November 6, 1982, appellee Channel 4, KGBT, broadcast a news segment concerning a white supremacist organization. Appellee David Merrill was the news manager of Channel 4 at the time of the broadcast, and appellee David Marquis was a news reporter. During the broadcast of the news segment, an image of appellant Jimmy Briggs appeared momentarily; then the segment continued. The image was one of Jimmy Briggs giving a speech at a podium. The depiction of Jimmy Briggs within the segment on the white supremacist organization caused him and his wife, Jimmie Briggs, to receive numerous phone calls and abusive or harassing treatment from viewers who apparently inferred that Jimmy Briggs was connected with the racist group.

Appellees moved separately for summary judgment, each contending alternatively that they were not negligent and that appellant was a public figure, or a public official, and they did not act with actual malice. The trial court, in its order granting summary judgment, did not state the grounds on which it ruled.

The first question is the status of a libeled plaintiff: is he a public or private individual? This is a question for the trial court in the first instance, to be independently reviewed on appeal. *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 679, 15 L.Ed.2d 597 (1966); *see Marcone v. Penthouse International Magazine for Men,* 754 F.2d 1072, 1081 n. 4 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985); *see also Bose Corp. v. Consumers Union,* 466 U.S. 485, 510–11, 104 S.Ct. 1949, 1964–65, 80 L.Ed.2d 502 (1984) (independent appellate review of actual malice finding). There is no evidence in the summary judgment record before us that appellant Jimmy Briggs was a public official during or before the time of the publication. Nor was there evidence presented to the trial court that Briggs had sufficient notoriety in the community to make him a public figure for all purposes. We find, however, that appellant Jimmy Briggs was a limited-purpose public figure.

There is more than one reason why a candidate for public office such as appellant Jimmy Briggs is a public figure for first amendment purposes. Candidates, by their very candidacy, thrust themselves into the vortex of a public issue (the election) and, in doing so, attempt to engage the public's attention in order to influence its outcome. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). Further, speech constituting comments on the qualifications of candidates for public office occupies a special place in the context of the first amendment. Anything which might touch on a candidate's fitness for office is a matter of public concern vital to our system of democratic elections. *See Ocala Star-Banner Co. v. Damron,* 401 U.S. 295, 91 S.Ct. 628, 28 L.Ed.2d 57 (1971); *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 275, 91 S.Ct. 621, 627, 28 L.Ed.2d 35 (1971); *see also Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed. 2d 659 (1976). Certainly, any publication tending to suggest that a candidate is a

member of a white supremacist organization would fall into this category.

Even though Jimmy Briggs technically was not a candidate at the time of the publication in question, the election was held only four days earlier. This short span of time did not remove him from the public eye sufficiently that comment on his qualifications would have lost the public interest which makes it necessary to apply the actual malice standard.[1] *See Rosenblatt v. Baer,* 383 U.S. 75, 87 n. 14, 86 S.Ct. 669, 676 n. 14, 15 L.Ed.2d 597 (1966). In *Newson v. Henry,* 443 So.2d 817 (Miss. 1983), a man who had served as sheriff from 1960 to 1963 and had unsuccessfully run for re-election in 1967 was held to be a public figure for purposes of a 1980 article regarding his candidacy. That well-reasoned opinion drew on the *Rosenblatt* case cited above, as well as other opinions, which hold that a limited-purpose public figure continues to be a public figure for the purpose of that issue so long as public interest remains. *See Rosenblatt,* 383 U.S. at 87 n. 14, 86 S.Ct. at 676 n. 14; *Street v. National Broadcasting Co.,* 645 F.2d 1227, 1235–36 (6th Cir.1981); *Brewer v. Memphis Publishing Co.,* 626 F.2d 1238, 1256–57 (5th Cir.1980); *Time, Inc. v. Johnston,* 448 F.2d 378, 380–82 (4th Cir.1971); *Fitzgerald v. Penthouse International,* 525 F.Supp. 585 (D.C.Md.1981); *Rawlins v. Hutchinson Publishing Co.,* 218 Kan. 295, 543 P.2d 988 (1975); *but see Rutt v. Bethlehem's Globe Publishing Co.,* 335 Pa.Super. 163, 484 A.2d 72, 79–81 (1984).

■ Once a libel plaintiff is established as a public figure, the first amendment to the United States Constitution requires that he prove with "convincing clarity" that the alleged libelous statement was made with "actual malice." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2508 & 2512–14, 91 L.Ed.2d 202 (1986). Under this rule, absent a knowing falsehood, liability requires proof of reckless disregard for the truth. In other words, the libel plaintiff must prove that the de-

fendant "in fact entertained serious doubts about the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). In the actual trial of this case, the libel plaintiffs must prove actual malice or actual reckless disregard for the truth. However, in a summary judgment proceeding, the movant must establish lack of actual malice as a matter of law.

The only summary judgment proof to support appellees' motion which touches on the malice issue is contained in affidavits filed by appellees Marquis and Merrill. Marquis' affidavit states in pertinent part:

I did not know Jimmy Briggs or Jimmie Briggs personally prior to the newscast in question. I only knew of Jimmy Briggs as a Republican political candidate in Hidalgo County. I had covered Mr. Briggs' campaign on occasion. I had in 1982 and I have at the present no ill feelings toward either Jimmy Briggs or Jimmie Briggs and I have no reason or desire to injury [sic] them.

With respect to the likeness of Mr. Briggs which appeared during that news cast and as to which he brings this lawsuit, I did not know that this likeness would appear during that newscast. I did not authorize or direct such likeness to be shown during that newscast.

I believe, based on my knowledge of how the video portion of these newscast [sic] are pieced together that the likeness appeared on the newscast because of a fluke resulting from the use of a tape on which Jimmy Briggs' likeness had been recorded in the course of one of his political campaigns which prior footage was not entirely erased. I further believe, based on my knowledge of the procedure for utilizing video tapes which have previously been utilized and putting together newscasts, that this likeness was merely not erased from this tape when the tape was reused by a technician at Channel 4.

---

1. The question of whether public figures could lose that status with the passage of time was expressly reserved in *Wolston v. Reader's Digest*

*Association,* 443 U.S. 157, 166 n. 7, 99 S.Ct. 2701, 2706 n. 7, 61 L.Ed.2d 450 (1979).

This situation did not result because of any failure to exercise due care to prevent it on my part or any action taken by me, and it certainly did not arise as a result of any actual malice on my part.

Merrill's affidavit, after stating that he was news director of Channel 4 at the time in question, states in pertinent part:

Prior to the incidents which are the subject matter of this lawsuit I did not personally know Jimmy Briggs or Jimmie Briggs and knew only that Jimmy was a Republican political candidate in Hidalgo County. I had no reason to dislike either Jimmy Briggs or Jimmie Briggs. I have never heard any discussion by any other person employed by Channel 4 Television in regard to Jimmy Briggs or Jimmie Briggs which indicated any negative feelings towards either of them. I did not have any reason, and I do not know that anyone else at Channel 4 Television, had any reason to seek to injure or defame Jimmy Briggs or Jimmie Briggs. As to the newscast as to which Jimmy Briggs and Jimmie Briggs complain, I did not see this newscast and was not aware of the matters of which Jimmy Briggs complains until after the newscast was on the air. As to the segment of the newscast in question in which the picture of Jimmy Briggs [sic] likeness appeared, I did not have any knowledge that this likeness would appear on the newscast in question. I did not authorize or direct anyone to cause such likeness to appear.

As news director, I have general supervisory authority over newscast preparation. I do not, however, edit footage to be shown on the air as a regular part of my job.

I believe that the likeness of Jimmy Briggs which appeared on the newscast which is the subject matter of this suit appeared there because of a fluke resulting from the use of a tape on which Jimmy Briggs' likeness had been recorded in the course of one of his political campaigns which prior footage was not entirely erased. I further believe, based on my knowledge of the procedure for utilizing video tapes which have previously been utilized and putting together newscasts, that this likeness was merely not erased from this tape when the tape was reused by a technician at Channel 4.

This situation did not result because of any failure to exercise due care to prevent it on my part or any action taken by me, and it certainly did not arise as a result of any actual malice on my part.

■■■ Under Tex.R.Civ.P. 166–A(c), "a summary judgment may be based on uncontroverted testimonial evidence of an interested witness, ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Affidavits as to a party's state of mind do not contain evidence which could be readily controverted. *Beaumont Enterprise & Journal v. Smith*, 687 S.W.2d 729, 730 (Tex.1985); *Langston v. Eagle Publishing Co.*, 719 S.W.2d 612, 625 (Tex. App.—Waco 1986, no writ). Neither do legal conclusions constitute summary judgment proof. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). All of the statements in the affidavits quoted above which bear on the absence of actual malice are either statements of the party's mental state or conclusory denials of actual malice. These do nothing more than raise a fact issue on the existence of actual malice. The statements which apparently are intended to state that the image of Jimmy Briggs appeared on the television inadvertently are statements based on knowledge or belief. Such statements are also incompetent as summary judgment evidence. An affidavit is insufficient unless it states facts positively and unequivocally and perjury can be assigned upon it. *See id.; Campbell v. Fort Worth Bank & Trust*, 705 S.W.2d 400, 402 (Tex.App.—Fort Worth 1986, no writ); *see also Associated Telephone Directory Publishers v. Better Business Bureau*, 710 S.W.2d 190, 192 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). We hold that appellees failed to carry their burden of negating the existence of actual malice as a matter of law.

Appellees rely on *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505,

2514, 91 L.Ed.2d 202 (1986), which holds that the plaintiff's burden of proving actual malice by clear and convincing evidence must be considered by the trial court in ruling on a motion for summary judgment. That case is distinguishable. First, it is expressly decided under the federal rule of procedure governing summary judgments, rather than Tex.R.Civ.P. 166–A. Second, in *Anderson* the movants supported their motion with an affidavit from the researcher and author of the allegedly libelous articles. The affiant detailed the extensive research he had undertaken and included an appendix in which he listed his sources for each allegedly libelous statement. We have held that appellees' motions for summary judgment were not accompanied by proper support. Neither affiant stated that he personally researched or prepared the news segment which contained the alleged libel, nor did either affiant state that he had personal knowledge of all of the facts relevant to the cause of the appearance of Jimmy Briggs' image. The *Anderson* rule that "the plaintiff must present affirmative evidence in order to defeat a *properly supported* motion for summary judgment" does not apply here. *Anderson,* 106 S.Ct. at 2514 (emphasis added).

Appellants raise other arguments in this appeal. They are not necessary for us to decide. We do point out that, in ruling on a summary judgment, the trial court is bound to consider only the written summary judgment evidence at the hearing. *See Troth v. City of Dallas,* 667 S.W.2d 152, 155 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Summary judgments may not be granted where the nonmovant defaults in answer or appearance, but only where the summary judgment proof merits it as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 68 (Tex.1972). Witnesses or testimony may not be presented at the hearing. *Nash v. Corpus Christi National Bank,* 692 S.W.2d 117, 119 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Even the presence of a court reporter is neither necessary nor appropriate to the purposes of a summary judgment hearing. *City of*

*Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

Because the appellees failed to conclusively negate all of the material fact issues concerning actual malice, the judgment of the trial court must be reversed and the cause remanded for a trial on the merits. The judgment of the trial court is hereby REVERSED and REMANDED.