**CHANNEL 4, KGBT et al.**

v.

**Jimmy BRIGGS and Jimmie Briggs.**

**No. C–6982.**

Supreme Court of Texas.

June 29, 1988.

Rollins M. Koppell, Michael R. Ezell and William Kimball, Koppel, Ezell, Jackson & Powers, Harlingen, for petitioners.

Larry Watts and Bonnie Cervin, Watts & Company, Houston, for respondents.

## OPINION

RAY, Justice.

This is a libel action brought by Jimmy Briggs, now deceased, a former political

candidate, in which KGBT, a television station, and two news reporters were alleged to have defamed Briggs in a news broadcast. The media defendants were awarded a summary judgment by the trial court. The court of appeals reversed the judgment of the trial court on the grounds that the defendants had failed to conclusively negate the existence of actual malice. 739 S.W.2d 377. We reverse the judgment of the court of appeals and affirm the judgment of the the the trial court.

In 1982, Briggs was a candidate for the office of State Representative, and was defeated in the general election. Four days after the election, KGBT broadcast a television news segment concerning the activities of the Ku Klux Klan and anti-Klan demonstrators. During the broadcast, an image of Briggs standing at a podium appeared for two or three seconds while the audio portion of the broadcast continued. Briggs' name was not mentioned and the news piece stated that it covered events that took place outside the Rio Grande Valley, which was the viewing area of the station. The depiction of Briggs during the broadcast prompted numerous telephone calls to his residence and caused him and his wife, Jimmie Briggs, to suffer abusive treatment from viewers who inferred that Briggs was affiliated with the Klan.

■ Briggs and his wife sued KGBT, its news manager David Merrill and news reporter David Marquis, alleging libel and negligent infliction of emotional distress.[1] Each of the defendants moved separately for summary judgment contending that they were not negligent in broadcasting the news segment, and alternatively, that Briggs was a public figure and/or a public official and that the defendants had not acted with actual malice as is required for a finding of liability.

Marquis' summary judgment evidence consisted of an affidavit in which he said that he:

(a) did not know the Briggses personally prior to the newscast;

(b) knew of Jimmy Briggs as a Republican candidate for office in Hidalgo County;

(c) had no ill feelings toward the Briggses nor any reason to want to injure them;

(d) did not know Jimmy Briggs' likeness would appear on the newscast, nor did he authorize or direct it to be shown;

(e) believed Jimmy Briggs' likeness appeared as a fluke from the re-use of a tape of him which was not entirely erased;

(f) received a call from Jimmy Briggs during the same telecast, and upon learning of what happened, stated on the air that Jimmy Briggs was not connected with the Ku Klux Klan news segment.

Merrill's affidavit stated that he:

(a) did not know the Briggses personally prior to the newscast;

(b) knew of Jimmy Briggs as a Republican candidate in Hidalgo County;

(c) had no reason to dislike Jimmy Briggs;

(d) never heard any discussion by any Channel 4 employee which indicated any negative feelings toward them;

(e) did not see the newscast and was not aware of the matter until after the newscast was on the air;

(f) had no knowledge that Jimmy Briggs' likeness would appear on the newscast, nor did he authorize or direct it to be shown;

(g) the occurrence was a fluke or accident because Jimmy Briggs' likeness had been recorded in the course of his political campaign and had not been entirely erased.

---

1. The Briggses' attorney revealed to this court at oral argument that since the appeal of the case, Jimmy Briggs has died. While one cannot bring a cause of action for the defamation of a person already dead, one who is alive while he is defamed and later dies, has a cause of action for defamation which survives his death. *See* *Tex.Civ.Prac. & Rem.Code* § 71.021 (Vernon 1986).

The trial judge granted the defendants' motions for summary judgment. On appeal by the Briggses, the court of appeals held that the affidavits in question "do nothing more than raise a fact issue on the existence of actual malice," and that the recent United States Supreme Court decision of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) addressing the burden of proof in federal summary judgment proceedings did not apply. 739 S.W.2d at 379–80. The application of *Anderson* need not be reached in the present case.

Beginning with *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court has sought to balance the concern embodied in the first amendment that debate on public issues be wide-open and uninhibited, with the concern that a defamed individual be allowed to recover for his unjust suffering. In *New York Times*, the Supreme Court declared that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'...." *Id.* at 279–80, 84 S.Ct. at 726. The *New York Times* requirements have since been extended to libel suits brought by public figures as well. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed. 2d 1094 (1967).

■ In the present case, in accordance with *Curtis Publishing* and its progeny, the court of appeals determined that Briggs is a public figure. Briggs has not contested this characterization by point of error to this court. Since Briggs in effect concedes that he is a public figure, he must prove that the broadcast which defamed him was published by KGBT with actual malice. For purposes of First Amendment litigation, "actual malice" requires that the defamatory statement be made with knowledge that the utterance was false or with reckless disregard of its truth or falsity. *Id.* at 280, 84 S.Ct. at 725. "Reckless dis-

regard" means that the publisher "in fact, entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). *See also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n. 6, 94 S.Ct. 2997, 3004 n. 6, 41 L.Ed.2d 789 (1974).

■ The evidence presented by the defendants in their affidavits militates against a finding of actual malice as defined by the U.S. Supreme Court. As explained by the defendants, the appearance of Briggs' image in the telecast was caused by a mistake on the part of the production crew, and occurred without the direction or knowledge of the defendants. At most, the defendants were negligent.

This court has recognized that actual malice does not encompass mere negligence:

> [R]eckless disregard is not to be measured by a reasonably prudent person standard. The *New York Times* malice standard looks to the defendant's state of mind at the time of publication. It is not enough for a plaintiff to show that the defendant made a mistake. An "erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive'."

*Foster v. Upchurch*, 624 S.W.2d 564, 566 (Tex.1981) (citations omitted) (quoting *New York Times*).

The defendants' uncontroverted affidavits in this case clearly establish the absence of any subjective awareness that they were broadcasting the image of Briggs in a defamatory fashion. Rule 166a(c) of the Texas Rules of Civil Procedure provides that "a summary judgment may be based on uncontroverted testimonial evidence of an interested witness, ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." The affidavits

in this case, while failing to set out specific facts as to the station's normal operating procedure, do state that the image of Briggs during the telecast was a technical mistake. The affidavits are clear, unambiguous, and as far as the technical procedures for the production of a telecast are concerned, subject to investigation. More importantly, this evidence was never controverted by the Briggses. Thus, under the plain language of Rule 166a(c), the defendants were entitled to summary judgment.

Here, Briggs filed the lawsuit in January, 1983 and it lay dormant until July of 1985, when it was placed on the dismissal docket. It was later reinstated. All discovery that was conducted in this case was done by the defendants. The Briggses had ample opportunity to conduct their own discovery to rebut the defendants allegations of lack of malice, in an attempt to raise a fact issue, but chose not to do so. Accordingly, we hold that in considering the evidence presented by the parties on the issue of actual malice, the trial court was correct in rendering summary judgment in favor of the defendants.

Contrary to the assertion of the concurring opinion, our decision does not "cast a cloud" on our prior holdings in *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986), and *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex. 1985). In those cases, the defendants sought to negate malice as a matter of law by mere self-serving statements about their state of mind. Here, the affidavits of Marquis and Merrill go far beyond state of mind to establish an objective explanation for the mistake. The distinction is clear. As there is no reason under the facts of this case to disturb our holdings in *Bessent* or *Smith,* we need not determine their continued viability or their constitutionality.

 Having determined that the defendants are entitled to summary judgment on the defamation claim, we next turn to the Briggs' negligent infliction of emotional distress claim. The United States Supreme Court has recently held that the same protections which the first amendment affords defendants from libel claims also protect them from intentional infliction of emotional distress claims. *Hustler Magazine v. Falwell,* —— U.S. ——, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). This means that a public official or figure asserting a claim for intentional infliction of emotional distress based upon a defamatory publication must meet those requirements set out in *New York Times* and its progeny, including the requirement of actual malice. The constitutional considerations are the same with respect to the allegations by a public official or figure of negligent infliction of emotional distress. Accordingly, the summary judgment evidence which entitles the defendants to summary judgment on the libel claim also entitles them to summary judgment on the negligent infliction of emotional distress claim.

For these reasons, the judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.

GONZALEZ, J., concurs.

GONZALEZ, Justice, concurring.

I concur with the result. However, I would modify our summary judgment procedure in public figure defamation cases because our current procedure does not adequately protect first amendment values.

While it is true that the production aspects of the telecast are readily controvertible, the court sidesteps the issue that the defendants' state of mind (malice or the lack of malice) is a fact issue in the case and that in previous decisions we have held that statements of defendants regarding their state of mind are not readily controvertible, and therefore do not constitute competent summary judgment evidence. *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986); *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d

729, 730 (Tex.1985).[1] Thus, the majority opinion is in conflict with these two cases.

It is important to note also that the United States Supreme Court has recently issued an opinion which appears to expand the scope of summary judgment review in first amendment litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[2] That Court stated that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* 106 S.Ct. at 2513. The heightened evidentiary burden applied to the summary judgment proceeding in *Liberty Lobby* was that burden established in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This burden requires that when a public official or public figure brings an action for defamation, he or she must establish the presence of "actual malice" in the mind of the defendant with "convincing clarity" in order to prevail. *New York Times*, 376 U.S. at 285–86, 84 S.Ct. at 728–29.

The court in *Liberty Lobby* also stated that when viewing summary judgment evidence to determine if a genuine factual issue as to actual malice exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under [the] *New York Times* [standard]." *Liberty Lobby*, 477 U.S. at 254, 106 S.Ct. at 2513. This requires the trial judge not only to consider the mov-

ant's summary judgment evidence, but also the non-movant's evidence, or lack thereof.

There is uncertainty as to whether *Liberty Lobby* expands first amendment substantive law which would be binding on all states through the Supremacy Clause, or whether it is based solely on Fed.R.Civ.P. 56, in which event it would not be binding on the states. Besides the court of appeals in this case, a second court of appeals has held that *Liberty Lobby* does not apply to Texas state court proceedings. *See Brasher v. Carr*, 743 S.W.2d 674, 681 (Tex.App.—Houston [14th Dist.1987], writ pending).

However, numerous sister states have cited *Liberty Lobby* as authority when interpreting their state summary judgment procedures for requiring greater scrutiny in defamation suits brought by public figures or public officials. *See, e.g., Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 724 P.2d 562, 571–76 (1986); *Planned Protective Services, Inc. v. Gorton*, 200 Cal.App.3d 1, 245 Cal.Rptr. 790, 793 (1988); *Miller v. Nestande*, 192 Cal.App.3d 191, 237 Cal.Rptr. 359, 361–62 (1987); *Della-Donna v. Gore Newspapers Co.*, 510 So.2d 984, 984–85 (Fla.Dist.Ct.App.1987) (Anstead, J., concurring); *Davis v. Keystone Printing Service, Inc.*, 155 Ill.App.3d 309, 108 Ill.Dec. 17, 26, 507 N.E.2d 1358, 1367 (1987); *Hudson v. Guy Gannett Broadcasting Co.*, 521 A.2d 714, 716 (Me.1987) (dictum); *Hudak v. Fox*, 215 N.J.Super. 233, 521 A.2d 889, 891–92 (1987); *Scacchetti v. Gannett Co.*, 123 A.D.2d 497, 507

---

1. Both of the cases were libel actions brought against media defendants. In both cases, the defendants filed a motion for summary judgment on the basis that there was no evidence of malice. As in this case, the defendants filed an affidavit which concluded that they lacked malice. As here, the plaintiffs "had ample opportunity to conduct their own discovery to rebut the defendants' allegations of lack of malice, in an attempt to raise a fact issue, but chose not to do so." 759 S.W.2d at 942. Nonetheless, this court held that the defendants' affidavits as to state of mind could not be readily controverted and therefore did not constitute evidence upon which summary judgment could be granted.

2. Liberty Lobby, Inc., and its founder, Willis Carto, sued Jack Anderson and others for libel

because three magazine articles allegedly portrayed the plaintiff as neo-Nazi, anti-Semitic, racist, and fascist. The federal district court granted summary judgment for the defendants and held that the plaintiffs were public figures and that they could not show actual malice. The District of Columbia Court of Appeals reversed and held that the requirement of clear and convincing proof of actual malice at trial was irrelevant at the summary judgment stage. The U.S. Supreme Court reversed the D.C. Circuit Court of Appeals and held that the plaintiff's heightened burden to prove actual malice at trial must be taken into account at the summary judgment stage.

N.Y.S.2d 337, 339 (1986); *Varanese v. Gall*, 35 Ohio St.3d 78, 518 N.E.2d 1177, 1181 (1988); *Herron v. Tribune Publishing Co.*, 108 Wash.2d 162, 736 P.2d 249, 255–56 (1987); *Guntheroth v. Rodaway*, 107 Wash.2d 170, 727 P.2d 982, 985 (1986) (en banc); *Long v. Egnor*, 346 S.E.2d 778, 785–86 (W.Va.1986). *See generally, Rebozo v. Washington Post Co.*, 637 F.2d 375, 381 (5th Cir.1981); *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 863–865 (5th Cir. 1970); *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.Cir.1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); *Reader's Digest Assoc. Inc. v. Superior Court of Marin County*, 37 Cal.3d 244, 208 Cal.Rptr. 137, 140, 690 P.2d 610, 613 (1984) (en banc); *DiLeo v. Koltnow*, 200 Colo. 119, 613 P.2d 318, 323 (1980) (en banc); *Kotlikoff v. The Community News*, 89 N.J. 62, 444 A.2d 1086, 1088 (1982); *Mark v. Seattle Times*, 96 Wash.2d 473, 635 P.2d 1081, 1088 (1981) (en banc); and *Adams v. Frontier Broadcasting Co.*, 555 P.2d 556, 562 (Wyo.1976).

Whether *Liberty Lobby* requires us to modify our summary judgment procedure by imposing a greater scrutiny in public figure defamation suits need not be decided. This is so because I believe that fidelity to our own Constitution requires a modification of summary judgment practice in public figure defamation cases.

### Texas Constitution

Article 1, section 8 of the Texas Constitution provides:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.

This is more expansive than the United States Bill of Rights which states: "Congress shall make no law ... abridging the freedom of speech or of the press...." U.S. Const. amend. I.

One can readily see that the Texas Constitution expresses free speech guarantees in positive terms while the United States Constitution expresses first amendment freedom in negative terms. Thus, the rights of free speech and press guaranteed by our Texas Constitution are more extensive than those guaranteed by the Federal Constitution. *See Ex Parte Tucker*, 110 Tex. 335, 220 S.W. 75, 76 (1920).

These values embodied in our Texas Constitution have the strongest claim for special procedural safeguards. Our summary judgment procedure should be sensitive to these substantive values. A close examination of our current summary judgment practice, however, reveals that it is tilted in favor of defamation plaintiffs. *See Smith*, 687 S.W.2d at 730. At trial, it requires defendants to conclusively prove an absence of malice. This is almost an impossible burden since we indulge every reasonable inference and resolve every doubt in favor of the defamation plaintiff. This burden is compounded by the fact that we have previously held that statements by defendants regarding their state of mind (lack of malice) are not competent summary judgment evidence. For this reason, summary disposition of defamation cases rarely withstands appellate scrutiny. The result is that media defendants are forced to dig deep into their pockets and put up not only with the cost but also the burdens of protracted litigation in order to vindicate their constitutionally guaranteed rights. This causes an erosion of freedom of expression and has a chilling effect on the media's role as a forum for the dissemination of ideas and information.[3]

The Supreme Court has stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... and ... it should be interpreted in a way that allows

---

3. *See* Matheson, *Procedure in Public Person Defamation Cases: The Impact of the First Amend-* *ment,* 66 Texas L.Rev. 217 (1987).

it to accomplish this purpose." The inquiry is one of determining whether there is a need for a trial and that determination depends on whether "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). *See also* Hittner, *Summary Judgments in Texas*, 22 Hous.L.Rev. 1109 (1985).

To lessen self-censorship pressure, we should view summary judgment evidence with no interpretative bias in favor of either side and allocate the burden of proof and persuasion so as to minimize the self-censorship effect of defamation litigation. Therefore, we should adopt the following summary judgment procedure for defamation cases involving public officials and public figures where summary judgment is urged on the basis that the defendant lacks malice.

The defendant should have the burden of establishing a prima facie case negating the presence of actual malice. This burden may be met by informing the trial court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. This includes the lack of evidence presented by the plaintiff.

Once the defendant has met this initial burden, the burden of production and persuasion should shift to the plaintiff. The plaintiff must then show clear and convincing evidence of malice which can be presented to the trier of fact. *See Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex. 1984). If the plaintiff fails to meet this burden after being given ample opportunity to conduct discovery, the motion for summary judgment should be sustained.[4]

This is in effect the procedure utilized by and adopted subsilentio by the majority in this case. By their affidavits the defendants met their initial burden of establishing a prima facie case on the issue of the absence of malice. The burden of production and persuasion shifted to the Briggses. The majority writes:

> The Briggses had ample opportunity to conduct their own discovery to rebut the defendants allegations of lack of malice, in an attempt to raise a fact issue, but chose not to do so. Accordingly, we hold that in considering the evidence presented by the parties on the issue of actual malice, the trial court was correct in rendering summary judgment in favor of the defendants.

759 S.W.2d at 942.

The majority opinion casts a cloud on the continued validity of our prior holdings in *Bessent* and *Smith*.[5] I would overrule them outright.

---

**4.** *I should not be understood by this writing to be in favor of changing the summary judgment practice heretofore established for Texas courts in any cases other than first amendment cases where malice is an element of the cause of action. I would apply the burdens of proof and persuasion set out in* City of Houston v. Clear Creek Basin Authority, *589 S.W.2d 671, 678–79 (Tex.1979) and its progeny in all cases except those invoking the substantive protections of the first amendment. In these cases, I would follow* Sakowitz, Inc., *669 S.W.2d at 107, wherein the court held "... a non-movant ... must come* forward by written motion and sworn proof to controvert the summary judgment proof."

**5.** The majority's attempt to distinguish these cases is not persuasive. Admittedly, the facts are different. But it is not the facts with which I am concerned; rather, it is the law to be applied to those facts and the inconsistent application of the law by this court which has yielded different results in *Bessent, Smith* and this case. It makes it hard to predict what this court will do in the future.