**Lynn BRASHER, Appellant,**

v.

**Walter CARR & Al Thiel, Appellees.**

**No. C14–86–753–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 12, 1987.

Rehearing Denied Jan. 7, 1988.

Beatrice Mladenka–Fowler, Houston, for appellant.

Richard Warren Mithoff, Craig Smyser, Houston, for appellees.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Lynn Brasher, plaintiff below, appeals the granting of separate motions for summary judgment brought by the two defendants to his libel suit. The allegedly libelous publications were political pamphlets criticizing Brasher's performance as mayor of the city of South Houston. Walter Carr authored the pamphlets printed at Al Thiel's printing shop. The significant issues on appeal require balancing the appellees' First Amendment rights to free expression of opinion on political issues with appellant's right to seek damages against those who injure his reputation.

On September 27, 1985, appellant filed his original petition alleging that Carr and Thiel published libelous statements in a "series of brightly colored brochures" mailed out to every citizen in the city of South Houston. In a rather rambling manner the petition mentions in particular two brochures, one identified by a publication date of February 1985, and another by its title. Neither appellee filed special exceptions to the petition. Instead, appellee Thiel filed interrogatories asking appellant to "[p]lease state verbatim each and every statement or publication which you contend ... defamed you. Include in your response the date and place of each publication and

the name and address of each person to whom the publication was made." At the same time appellee Thiel requested production of "[a] copy of each and every statement in written or other graphic form that you contend libeled or defamed Plaintiff."

Appellant answered the interrogatories by listing seven items. Each item included the approximate publication date, a phrase or sentence in quotation marks, and a statement about how the item was distributed (*E.g.*, "Distributed U.S. bulk rate mail, permit no. 66, paid for by the Elect Thiel campaign—Helen Thiel, Treasurer."). In response to the request for production appellant provided copies of six of the listed items, all brochures or handouts. (The seventh item was a hand-painted sign.) Brasher gave the same answer to substantially similar interrogatories filed by Carr.

In their first motions for summary judgment, appellees treated the phrases in quotation marks in appellant's answers to interrogatories as the only statements at issue. Appellant responded to appellees' motions for summary judgment, and also filed amended answers to both sets of interrogatories stating: "As a supplement to the previous Answer, please find attached hereto as Exhibits 1 through 6 publications containing statements that, *when taken as a whole,* are alleged by the Plaintiff to be libelous. (These publications were listed in the Plaintiff's Response to Defendant's [Thiel] First Interrogatories and later submitted in response to Defendant's Request for Production.)" (Emphasis added.)

Appellees rewrote their motions for summary judgment urging essentially the same grounds for dismissal.

In the meantime, appellant issued notices of depositions of both defendants and subpoenas duces tecum calling for production of "each and every document ... which would substantiate each factual statement, claim or allegation made" in the brochures listed by appellant in his answers to inter-

rogatories. Both appellees moved the court to quash the subpoenas duces tecum. They urged that it was unfair for appellant to require production of documents substantiating facts stated in the brochures when appellant refused to specify what statements in those brochures he contends were defamatory. Both appellees sought sanctions against appellant for discovery abuse. Appellee Carr filed a separate motion to strike appellant's amended answers to interrogatories with an additional request for sanctions. The court heard these three motions July 21, 1986, (the day of the scheduled depositions). It granted in part the motions to quash, "granted defendants' requests for sanctions," and ordered appellant to pay $500 as "sanctions, fees, and costs" to each defendant.

We note that in appellant's petition he alleges slander (perhaps as to Carr only) and libel, but the legal arguments in the motions for summary judgment and on appeal address only libel, and only in relation to four particular brochures. The summary judgments ordered that appellant take nothing, thus dismissing all claims. (Thiel's appeal brief points out Brasher's failure to raise points of error addressing dismissal of the slander causes of action and argues that any error is now waived.)

Apparently, appellees consider the issues to have been narrowed by their interrogatories asking appellant to list all statements he claims defamed him. We sympathize with appellees' frustration arising from the vagueness of appellant's petition and of his answers to interrogatories. The petition is probably subject to special exceptions because it failed to specifically allege, through innuendo or otherwise, how and in what manner appellant has been defamed by the four brochures and verbal statements. *See Langston v. Eagle Publishing Co.*, 719 S.W.2d 612, 628 (Tex.App. —Waco 1986, writ ref'd n.r.e.). However, we do not equate, as appellees seem to do,[1]

---

**1.** Carr's motion for summary judgment in part stated: "Since such allegations fail to state any words directly attributable to either Defendant Carr or Defendant Thiel, such allegations fail to state a cause of action and fail to raise any

genuine issue of material fact, and Defendant Carr is entitled to judgment as a matter of law with respect to such allegations." Summary judgment based upon failure to state a cause of action is improper when the defects in pleading

the functions of interrogatories with the functions of special exceptions. In our review we will look at the four brochures "taken as a whole," and evaluate each of the arguments appellees presented to the trial court in support of their motions. At times we will focus attention on particular sentences, phrases or possible innuendo found in one or more of the four brochures at issue. In doing so we are not attempting to isolate for appellant all statements that may be libelous; nor do we mean to limit for appellees the issues to be tried on remand.

"When a trial court enters an order that does not state the grounds upon which it was granted, the party appealing must show that each of the independent arguments alleged in the motions are insufficient to support the order." *Netterville v. Interfirst Bank,* 718 S.W.2d 921 (Tex.App.—Beaumont 1986, no writ); *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Both appellees urged four reasons summary judgment was proper:

1. The statements allegedly made or published do not constitute libel, slander or defamation as a matter of law.

2. The statements are not actionable because they either are opinion or true statements of fact.

3. Plaintiff was a public official, and as a matter of law, no actual malice existed to support recovery for libel, slander or defamation in this case.

4. The publications allegedly made by Defendant Carr are privileged (*citing* Tex. Prac. & Rem.Code Ann. § 73.002 (Vernon 1986)) and are not grounds for a libel action.

Additionally, appellee Thiel raised in his motion for summary judgment what he calls a privilege of accurate republication and the affirmative defense of limitations regarding the first three brochures. Thiel

could be cured through repleading in response to special exceptions. *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974); *Bagg v.*

was served more than one year after the publication date for these three brochures.

The initial inquiry in any libel case is whether the allegedly libelous words are reasonably capable of a defamatory meaning. *Musser v. Smith Protective Services, Inc.,* 723 S.W.2d 653, 654 (Tex.1987). In Texas a statement is defamatory if it tends to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt, or ridicule, or financial injury, or to impeach his honesty, integrity, or virtue, or reputation. Tex.Civ.Prac. & Rem.Code Ann. § 73.001 (Vernon 1986).

In his petition appellant alleged that some of the statements in the pamphlets, by innuendo, accuse him of misusing public funds and of corruption and are libelous per se. He further developed this theory in his response to motions for summary judgment. There he argued that certain statements in the four publications amount to accusations of official misconduct, which is both a crime (Tex.Pen.Code Ann. § 39.01 (Vernon Supp.1987)) and grounds for removal from office (Tex.Rev.Civ.Stat. art. 5991 (Vernon 1962)).

■ Statements that are of such a character as, if true, would subject a public official to removal from office or charge him with a crime are libelous per se. *Fitzjarrald v. Panhandle Publishing Co.,* 149 Tex. 87, 228 S.W.2d 499, 503 (1950); *Nobles v. Eastland,* 678 S.W.2d 253, 255 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). *See also, Houston Press Co. v. Smith,* 3 S.W.2d 900, 906 (Tex.Civ.App.—Galveston 1928, writ dism'd) (Statements that impute to a public official dishonesty and corruption, unless proven true, form the basis for an action for libel brought by a public official.) The term "libelous per se" means the words are so obviously hurtful to the person aggrieved by them that they require no proof of their injurious character to make them actionable. *Rawlins v. McKee,* 327 S.W.2d 633, 635 (Tex. Civ.App.—Texarkana 1959, writ ref'd n.r. e.). Any statement that is by innuendo

*Univ. of Texas Medical Branch,* 726 S.W.2d 582, 587 (Tex.App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.).

libelous per se must be capable of a defamatory meaning.

■ Whether words are capable of the defamatory meaning the plaintiff attributes to them is usually a question of law for the court. *Musser,* 723 S.W.2d at 655. The court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Id.* If the publication contains statements that are ambiguous in their meaning or of doubtful import, then a court cannot say as a matter of law the article is not defamatory. *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex.1985); *Sellards v. Express–News Corp.,* 702 S.W.2d 677, 679 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). The meaning the article would convey to an ordinary person becomes a question of fact for the jury. *Beaumont Enterprise,* 687 S.W.2d at 730; *Rose v. Enterprise Co.,* 617 S.W.2d 737 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.). We hold that at least some of the statements in the four brochures are ambiguous or of doubtful import. For instance, it is possible that the following language in the fourth brochure would convey to an ordinary person that Carr was accusing Brasher of official misconduct:

2. Brasher paid four (4) of his "friends" $34,328.00 for "grass mowing", all paid by taxpayers. Let us see if cronyism and more is involved.

. . . . .

And do you know that while the City gave $34,328.00 to Brasher's cohorts that the City only collected $11,042.50! YOU ONLY LOST $23,285.50 ON HIS PAYOFFS!

. . . . .

How many of you made $11,150.00 as CHARLES POWELL did on a sunny Saturday or Sunday in addition to regular employment?

---

**2.** This common law privilege was not pled by appellees. A qualified privilege to libel must be pled as an affirmative defense. *Little v. Bryce,*

Also, in the third brochure, these statements are ambiguous and may convey accusations of official misconduct:

(2) Brasher: Why did you pay your personal bookkeeper, Patricia Burgess thousands and thousands of dollars with General Fund checks of the City of South Houston (taxpayers dollars, signed by you) made payable to her as a Certified Public Accountant when such was blatantly false and misleading?

We hold that the summary judgment cannot stand if based upon appellees' contention that the pamphlets were not defamatory as a matter of law.

The next three grounds for summary judgment urged by both appellees concern affirmative defenses of privilege. The law has recognized the defense of privilege in defamation cases because in certain circumstances society is better served by permitting defamatory speech than by compensating those injured by it. *Zarate v. Cortinas,* 553 S.W.2d 652, 654 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Herron v. Tribune Publishing Co., Inc.,* 108 Wash.2d 162, 736 P.2d 249 (1987), *citing* Restatement (Second) of Torts Introductory note at p. 242 (1977) and W. Prosser, Torts § 109 (3d ed. 1964).

Several privileges arise when the plaintiff in a libel suit is a public office holder or candidate. Those applicable here are:

1. an absolute privilege to publish opinion (*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974));

2. a constitutionally mandated qualified privilege (*New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964));

3. a common law qualified privilege, also known as the fair comment doctrine[2];

4. and a statutory qualified privilege available to publishers of newspapers and periodicals (Tex.Civ.Prac. & Rem.Code Ann. § 73.002 (Vernon 1986)).

Appellees put the greatest emphasis on the absolute privilege to publish opinion

---

733 S.W.2d 937, 938 (Tex.App.—Houston [1st Dist.] 1987, no writ).

about a candidate's fitness for office and about the manner in which a public official performs his duties. They quote the following dicta in *Gertz:*

Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on the public issues.

418 U.S. at 340, 94 S.Ct. at 3007, 41 L.Ed.2d at 805.

The distinction between fact and opinion is not new to Texas jurisprudence. It was at the basis of the doctrine of fair comment. *See A.H. Belo & Co. v. Looney,* 112 Tex. 160, 246 S.W. 777 (1922). The Court in *Gertz* "elevated to constitutional principle the distinction between fact and opinion." *Ollman v. Evans,* 750 F.2d 970, 975 (D.C.Cir.1984).

Different courts have utilized various approaches in the difficult process of distinguishing fact from opinion. The El Paso Court of Appeals has adopted as "logical and workable" the four-factor test developed in *Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984). *El Paso Times, Inc. v. Kerr,* 706 S.W.2d 797 (Tex.App.—El Paso 1986, writ ref'd n.r.e.), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 761. We too will analyze the problem using the four *Ollman* factors. But first, let us restate the "paradigm examples" of statements of facts and statements of opinion, as proposed in *Ollman.* A paradigm statement of fact "describes present or past conditions capable of being known through sense impressions." *Ollman v. Evans,* 750 F.2d at 978 (D.C.Cir.1984). A paradigm of opinion is an "evaluative statement reflecting the author's political, moral, or aesthetic views, not the author's sense perceptions." *Id.*

■ Many of the statements in the four brochures at issue easily fit within the category of opinion. An example from the first brochure is: "The bottom line is that this public servant has no administrative ability, is totally inept, and makes up for his obvious shortcomings and incompetencies by uttering loud strident vulgarities." This is an absolutely privileged statement of opinion. It is not actionable.

Other portions of the publications at issue present a much more difficult question. We again focus on the language quoted above in which Carr questions the propriety of paying Brasher's "cohorts" $34,-328.00 for "grass mowing." In particular, Carr states: "YOU ONLY LOST $23,-285.50 ON HIS PAYOFFS!" Brasher has pled that this language accuses him of corruption in office.

Under *Ollman* the first inquiry is to analyze the common usage or meaning of the allegedly defamatory words themselves. *Id.* at 979–80. Does the word "payoffs" have a precise meaning that is likely to give rise to clear factual implications? The term payoff can have the innocuous meanings of "1. the act, event, or time of payment 2. a settlement or reckoning 3. that which is paid off; return; recompense." Webster's New World Dictionary of American Language, 1044 (2d College ed. 1970). It also, in the colloquial, means "a bribe." *Id.* "Corruption" in the context of public service has been deemed by courts to imply factual allegations of bribery or other official malfeasance. *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1976), *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). *See also Cianci v. New Times Publishing Co.,* 639 F.2d 54, 64 (2d Cir.1980).

A case with similar facts was decided, after *Gertz,* in New York's highest court. *Silsdorf v. Levine,* 59 N.Y.2d 8, 462 N.Y.S. 2d 822, 449 N.E.2d 716 (1983). The defendant in that case stated in an open letter that "[i]t pays to do business with the mayor" and that the plaintiff had attempted to issue a building permit improperly to a private client. The New York court held:

The unmistakable import of such statements is that plaintiff misused his public

office and acted illegally to promote the interests of his clients and thus of himself. We conclude that the statement might reasonably be interpreted by the average reader as charging plaintiff with illegal conduct while in office.... [P]laintiff's complaint must be deemed legally sufficient.

*Id.* at 16, 462 N.Y.S.2d at 827, 449 N.E.2d at 721.

In the same way, the allegations that Brasher rewarded his "cohorts" with "payoffs" might reasonably be interpreted as a charge of illegal conduct, which is a factual statement rather than a statement of opinion.

The second factor proposed in *Ollman* is the degree the challenged statements are verifiable. 750 F.2d at 981. Verifiability indicates that a statement is factual and not opinion. Most of the statements in the brochures that are not clearly opinion are verifiable statements. The amounts paid to Brasher "cohorts" should be verifiable through a look at city accounting records. Whether of not those persons were "cohorts" is less easily verified, but still more "fact-laden" than "opinion-laden."

The third *Ollman* factor is to consider the linguistic context of the allegedly defamatory statements. 750 F.2d at 982. We agree with appellees that Carr's inflammatory style and frequent use of hyperbole tends to indicate to the reader he is expressing opinion. But our inquiry cannot stop here.

The *Ollman* court noted that the use of interrogatories such as "Is it not true that ...?" is one linguistic device that weakens the inference that the author possesses knowledge of damaging undisclosed facts, therefore signalling opinion rather than defamatory factual statements. 750 F.2d at 983. Carr often uses interrogatories in his brochures. However, some of Carr's questions do infer undisclosed damaging facts. For instance, "Why did you pay your personal bookkeeper, Patricia Burgess thousands and thousands of dollars with General Fund checks of the City of South Houston (taxpayers dollars, signed by you)" could infer to the average reader that these payments were for accounting work done for Brasher personally, and not for the city. *See* Annotation, *Defamation by Question,* 53 A.L.R.4th 450 (1987).

The fourth *Ollman* factor is to examine the "broadly social" context in which the statements occur. 750 F.2d at 983. Appellees argue that because the brochures are of the tradition of political pamphleteering they indicate to the reader that its contents are opinion and not actionable. *See Gouthro v. Gilgun,* 12 Mass.App.Ct. 591, 427 N.E.2d 1166, 1168 (1981). They compare their publications to editorials in newspapers. We are not convinced that a political pamphlet of the sort distributed by appellees signals to the reader that the writer is conveying opinion rather than fact in the same way that placement of an article on an editorial page signals opinion. A reader receiving these pamphlets in the mail may just as readily think that he is reading facts that other, more traditional media have failed to report, or facts brought together by persons interested in letting voters "know the true story." Appellees want us to treat the pamphlets as opinion, yet Carr wrote in his first publication: "Let us look at the facts AND the record." In the second brochure Carr juxtaposed quotes from Brasher with *"FACTS and TRUTH AND REPLY."*

■ Considering the brochures as a whole, we find that the publishers are not entirely protected by the absolute privilege to express opinion because some of the statements in the brochures are so "factually laden" that they must be considered statements of fact, and not of opinion.

■ Appellees have also urged that those statements that are not opinion are not actionable as a matter of law because they are true statements of fact. In response to the motions for summary judgment Brasher challenged the truth of nearly every fact statement in a long and detailed affidavit. Whether potentially defamatory statements of fact are true is obviously a fact issue for the jury. The summary judgments were in error if granted on the theory that the statements in

them are not actionable because they are either opinion or true statements of fact.

The other privileges asserted by appellees are qualified privileges available only if the publications were made without actual malice. Both sides agree that appellant is a public figure. Appellees insist they are entitled to summary judgment because, as a matter of law, no actual malice existed to support recovery for libel. The summary judgment "proof" of no malice consists of their own affidavits and their deposition testimony concerning how they verified, or failed to verify, the facts put in the brochures.

In Texas obtaining a summary judgment on the basis of no actual malice has been next to impossible. The burden is on appellees to show the absence of actual malice; every reasonable inference must be indulged in favor of the non-moving party; any doubts must be resolved in his favor. *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986); *Beaumont Enterprise & Journal v. Smith, 687 S.W.2d 729, 730 (Tex.1985); Langston v. Eagle Publishing Co.,* 719 S.W.2d 612, 625 (Tex. App.—Waco 1986, writ ref'd n.r.e.); *Associated Telephone Directory Publishers, Inc. v. Better Business Bureau of Austin, Inc.,* 710 S.W.2d 190, 192 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Goodman v. Gallerano,* 695 S.W.2d 286 (Tex.App.—Dallas 1985, no writ).

More recently, the United States Supreme Court has issued an opinion in which it appears to put the burden of proof at the summary judgment stage on the plaintiff and to require the plaintiff to present to the court "clear and convincing" proof that the defendants published the defamatory falsehoods with knowledge that they were false or with reckless disregard of whether the statements were false. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[3]

*Liberty Lobby* involved a summary judgment entered in a federal district court and

applied the federal summary judgment rule. Fed.R.Civ.P. 56. In particular, the Court emphasized subsection (e), which states that when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. The Texas summary judgment rule contains no similar language. Tex.R.Civ.P. 166–A.

If the holding in *Liberty Lobby* is founded upon the necessity to preserve the constitutional right to free speech, then this court must follow it over our Texas Supreme Court. *See Stoker v. State,* 169 Tex.Cr.R. 59, 331 S.W.2d 310 (App.1960). However, the holding in *Liberty Lobby* regarding proof of actual malice at the summary judgment stage depends upon the requirements of rule 56(e) and not upon first amendment concepts. This is particularly indicated in the court's seventh footnote which reads:

> 7. Our statement in *Hutchinson v. Proxmire,* 443 U.S. 111, 120, n. 9, 99 S.Ct. 2675, 2680, n. 9, 61 L.Ed.2d 411 (1979), that proof of actual malice "does not readily lend itself to summary disposition" was simply an acknowledgement of our general reluctance to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws." *Calder v. Jones,* 465 U.S. 783, 790–791, 104 S.Ct. 1482, 1487–1488, 79 L.Ed.2d 804 (1984).

477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 216. *Liberty Lobby* does not expand the first amendment protections afforded libel defendants.

■■■ Clearly, at trial a state court must place upon the plaintiff the burden of proving with clear and convincing evidence that the defendant published the falsehood with actual malice. However, the judgment before us was based upon a defendant's mo-

---

**3.** *Liberty Lobby* is one of a trilogy of recent Supreme Court cases that together indicate that the summary judgment practice in federal courts has changed. *See Matsushita Electric*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

tion urging that, as a matter of law, one element of the plaintiff's case was missing. The defendants in *Liberty Lobby* had the same burden, but the Court "assumed" that the initial burden had been met because the issue was not raised before the Court. 477 U.S. at 250 n. 4, 106 S.Ct. 2511 n. 4, 91 L.Ed.2d at 213 n. 4. It is clear that in Texas the initial burden of establishing the absence of malice at the summary judgment stage cannot be made through affidavits and testimony of interested parties testifying about their thought processes or even their steps in researching the facts published. *Beaumont Enterprise,* 687 S.W.2d at 730. *See also Briggs v. Channel 4,* 739 S.W.2d 377 (Tex.App.—Corpus Christi, 1987, writ granted.) (holding *Liberty Lobby* not applicable in Texas summary judgment libel case). We hold that appellees have not met the burden of producing sufficient evidence of no malice and summary judgment, if based on that theory, was improper.

■ Finally, we consider appellees' claim that the publications are privileged as reasonable and fair comment or criticism of an official act of a public official or other matter of public concern published for general information. Tex.Civ.Prac. & Rem. Code Ann. § 73.002 (Vernon 1986). Even if the four publications qualified as "other periodicals," this statutory privilege cannot encompass more than the absolute privilege to express opinion. Texas courts have held that the privilege of publishing reasonable and fair comment does not include publication of statements that impute criminal acts or conduct that would subject public officials to removal from office. *Express Publishing Co. v. Gonzalez,* 350 S.W.2d 589 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.); *Bell Publishing Co. v. Garrett Engineering Co.,* 141 Tex. 51, 170 S.W.2d 197, 203–04 (1943). Also, the statutory privilege is lost if the publication is made with actual malice. We have already held that summary judgment on the absence of malice was improper.

Because we find that summary judgment cannot be affirmed on any of the grounds asserted below by Carr, we sustain point of

error one and reverse the judgment in favor of Carr and remand.

Appellee Thiel asserted in his motion for summary judgment two additional reasons he was entitled to summary judgment: a so-called "privilege of accurate re-publication" and the one-year statute of limitations.

■ A limited privilege of accurate republication was recognized in *Edwards v. National Audubon Soc'y, Inc.,* 556 F.2d 113 (2d Cir.1977). The *Edwards* privilege was limited to accurate re-publication by a newspaper of statements made by a responsible prominent person or organization about a public figure. A privilege of accurate re-publication has not, to our knowledge, been recognized in Texas courts, although it has been suggested. Note, *Protecting the Public Debate: A Proposed Constitutional Privilege of Accurate Republication,* 58 Tex.L.Rev. 623 (1980). We decline to accept at this stage in the litigation Thiel's proposed privilege and hold that summary judgment cannot be affirmed on that ground.

■ Finally, Thiel asserts that the statute of limitations (Tex.Civ.Prac. & Rem. Code Ann. § 16.002 (Vernon 1986)) has run on the causes of action based on the first three brochures because he was served with process over one year after the publication dates. Brasher did not respond in writing to this ground of the motion summary judgment, nor did he mention it in his points of error on appeal. The record shows that Brasher filed his original petition September 27, 1985, approximately one month before the one-year statute of limitation would have run on the first brochure published. Thiel was served February 7, 1986, over three months past the limitations date for the first publication, and around one week late for the third publication. The mere filing of a petition does not toll the running of the statute of limitations. *Rigo Mfg. Co. v. Thomas,* 458 S.W. 2d 180, 182 (Tex.1970). The plaintiff must use due diligence in having the defendant served with process. Because Brasher offered no explanation for the delay in issuing and serving citation in his response to

motion for summary judgment, we hold as a matter of law that limitation has run for any cause of action based upon the first three publications. *Sanchez v. Providence Memorial Hospital,* 679 S.W.2d 732 (Tex.App.—El Paso 1984, no writ); *Liles v. Phillips,* 677 S.W.2d 802, 809 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). We reverse the summary judgment in favor of Thiel as it concerns the fourth publication.

The above discussion disposes of point of error one. Point of error two is superfluous and overruled.

In point of error three appellant contends that the judgment granting sanctions must be reversed as an abuse of discretion because appellant was under a duty to supplement and clarify his answers to interrogatories once it became apparent (through appellees' motions for summary judgment) that appellees misunderstood his answer. Tex.R.Civ.P. 166b(5)(a)(1).

We review an order imposing sanctions for discovery abuse using the clear abuse of discretion test. We can reverse only if the trial court was arbitrary or unreasonable or if it acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). At the hearing the trial court mentioned one reason he was going to order sanctions: "because it's going to require redoing the summary judgment." We do not agree with the trial court that this is a proper basis for awarding sanctions, but the test is not what this court would do under similar circumstances. *Id.* The statements verbalized by the trial court at the time he announced his decision are not necessarily inclusive of all the reasons for his actions. The reason for granting sanctions was not given in the order. Unless the judgment or order limits or explicitly states the basis on which the order is given, this court must look to all the arguments before the court to determine if the trial court acted without justification. Appellant does not address the possibility that the trial court levied sanctions against appellant for filing overbroad subpoenas duces tecum and causing appellees to present at a hearing motions to quash the subpoenas. "If the court finds ... that any interrogatory or request for production is unreasonably frivolous, oppressive or harassing," the court in which the action is pending may impose any sanctions, including an order to pay the opposing side's reasonable expenses, including attorney fees. Tex.R.Civ.P. 215(3) (referring to sanctions in rule 215(2)(b)(8)). We reluctantly hold appellant has not shown abuse of discretion and overrule point of error three.

The judgment in favor of appellee Carr is reversed and remanded for trial. The judgment in favor of appellee Thiel is affirmed insofar as it dismisses causes of action based upon publications made before February 7, 1985, and reversed insofar as it dismisses causes of action based on publications made less than one year before Thiel was served.